**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ABDUL HAMZA,

    Plaintiff,

                                Case No. 16-11641
v.                                       HON. DENISE PAGE HOOD

DUNHAMS ATHLEISURE
CORPORATION,

    Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS [#11]**

**I.    INTRODUCTION**

On May 6, 2016, Plaintiff filed a two-count Class Action Complaint against Defendant, and Defendant filed an initial motion to dismiss on July 20, 2016. After Plaintiff filed a First Amended Class Action Complaint on August 10, 2016 (Doc. No. 10), Defendant filed a Motion to Dismiss First Amended Class Action Complaint on August 24, 2016 ("Motion to Dismiss") (Doc. No. 11), which has been fully briefed, and each party has filed several notices of supplemental authority. A hearing on Defendant's Motion to Dismiss was held on November 9, 2016, at 3:00 p.m.

For the reasons that follow, the Court denies Defendant's Motion to Dismiss with respect to Count I and grants Defendant's Motion to Dismiss with respect to

1

Count II.

## II. STATEMENT OF FACTS

Plaintiff is an adult consumer who resides in Saint Clair Shores, Michigan, and Defendant is a Delaware corporation headquartered in Troy, Michigan. On February 29, 2016, Defendant began placing automated text messages to Plaintiff's cellular telephone number, 734-xxx-3421 (the "Number"), from SMS short code number 55678. The first text message from Defendant set forth: "Thank you 4 opting-in to the Dunhams mobile program." Plaintiff alleges that he had not: (1) opted in or text-messaged Defendant to effect an opt-in; (2) provided his cellular telephone number to Defendant; or (3) provided Defendant prior express written consent to send automated text messages to his cellular telephone. Plaintiff alleges that he does not know how Defendant obtained Plaintiff's cellular telephone number. (First Amended Class Action Complaint ¶ 22).

On February 23, 2016, an entrant named "Aisha Hamza" completed an internet form to enter a Detroit Red Wings sweepstakes program (the "Form"), a program was sponsored by Defendant. The Form completed by Aisha Hamza included the opportunity to receive promotional text messages from Defendant, as follows:

**Checkbox**
☐ By checking this box and providing your mobile number, you are subscribing to receive text message promotions from Dunham's Sports.

> Message & data rates may apply. Maximum seven messages per month, per subscription. You can cancel at any time. Dunham's respects your privacy – Your mobile number will be subject to our privacy policy. Links & coupons within Dunham's text messages are best viewed via smart phone & may not be accessible from all mobile phones.

Opting-in to receive text messages from Defendant required the entrant to affirmatively check the box, as the default setting was an unchecked box. When completing the Form, Aisha Hamza opted-in to receive messages from Defendant by checking the box, provided the Number as the mobile phone number to receive messages, and entered the same address where Plaintiff allegedly resides.

After the sweepstakes closed, the Detroit Red Wings sent a file to Defendant that included the telephone numbers that had opted-in, including the Number. According to Plaintiff, he began receiving text messages from Defendant on the Number on February 29, 2016. Plaintiff received numerous messages that marketed Defendant products, and each message appeared to be template-based and not personal to Plaintiff. (¶¶ 23-24). Each text sent by Defendant and received by Plaintiff included instructions on how to stop receiving subsequent text messages from Defendant. Plaintiff does not allege that he ever sent Defendant a response message asking Defendant to stop sending text messages to the Number.

Plaintiff alleges that he was injured by Defendant unauthorized text messages in a number of ways: (a) the messages invaded Plaintiff's privacy and annoyed,

frustrated, distracted, and inconvenienced Plaintiff while he was working on school assignments and during work hours (¶ 26); (b) he was disrupted by text messages from Defendant during dinner (¶ 26); (c) he was distracted while driving by incoming text messages from Defendant (¶ 26); (d) Defendant's text messages took over Plaintiff's cellular telephone, his personal property, during the time that the messages were incoming and while Plaintiff retrieved them, such that Plaintiff's time was wasted by text messages he neither asked for nor wanted (¶ 27); and (e) Defendant's text messages drained his cell phone battery, which he then had to recharge, requiring him to incur costs for electricity (¶ 28). Plaintiff also claims that the telephone number to which Defendant sent the text messages was assigned to a cellular telephone service for which Plaintiff incurred charges (¶ 28).

### III. APPLICABLE LAW & ANALYSIS

#### A. Rule 12(b)(1)

Fed.R.Civ.P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis. *Id.*

A factual attack challenges the factual existence of subject matter jurisdiction. In the case of a factual attack, a court has broad discretion

> with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. *Id*. Plaintiff bears the burden of establishing that subject matter jurisdiction exists. *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

*Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014).

    **b.**    **Analysis**

        *1.*    *Count I*

The TCPA makes it "unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number . . . assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1). The TCPA creates a private right of action in which a person may bring an action for a violation of § 227 and "receive $500 in damages for each such violation." *Id*. at § 227(b)(2)(G)(3)(B). And, "[i]f the court finds that the defendant willfully or knowingly violated this subsection . . . the court may . . . increase the amount of the award to an amount equal to not more than 3 times" the $500. *Id*. at § 227(b)(2)(G)(3)(C).

In order to state a TCPA claim for calls made to a cellular phone, a plaintiff must establish that: (1) a call was placed to a cell or wireless phone, (2) by the use of any automatic dialing system and/or leaving an artificial or pre-recorded message,

and (3) without prior express consent of the "called party." 47 U.S.C. § 227(b)(1)(A)(iii). An automatic dialing system ("ATDS"), as defined in the TCPA, is a device with "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator" and "to dial such numbers." 47 U.S.C. § 227(a)(1).

Defendant argues that he is making a factual challenge to jurisdiction and that Plaintiff does not have Article III standing because Plaintiff has not shown that a concrete injury-in-fact exists. Defendant asserts that, "because it had . . . written permission to send text messages to the Number, any alleged harm resulting from the receipt of the automated text messages would not amount to a concrete injury [for invasion of privacy], [and] Plaintiff has no Article III standing." Dkt. No. 15, PgID 203 (citing *Muslim Cmty. Ass'n v. Ashcroft*, 459 F.Supp.2d 592, 596 (E.D. Mich. 2006) (Hood, J.)).

Defendant first asserts that there can be no injury-in-fact due to invasion of privacy (which includes all the ways Plaintiff has alleged that the texts annoyed, frustrated, distracted and inconvenienced him) because Aisha Hamza consented to Defendant sending texts to the Number. Defendant contends that the consent of Aisha Hamza satisfies the TCPA's requirement that an ATDS text only be sent to a "called party" from whom it has consent. 47 U.S.C. § 227(b)(1)(A). As defined by the FCC,

a "called party" includes a subscriber and "any customary users," which includes "a close relative on a subscriber's family calling plan . . . , because the subscriber will generally have allowed such customary users to control the calling to and from a particular number under the plan, including granting consent to receive robocalls." 30 FCC Rcd 7961, 8001 (2015). Defendant relies on its contention that it is "undisputed" that it had the prior written consent of Aisha Hamza (whom Defendant assumes, but no evidence has been presented to show, is a close relative of Plaintiff) to send texts to the Number.[1]

Plaintiff does not challenge Defendant's position that Aisha Hamza gave consent, or had authority to consent, in writing to allow Defendant to send texts to the Number. Plaintiff instead argues that he is the only person who could consent to allow texts to the Number – and that he did not do so. Relying on *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250-52 (11th Cir. 2014). Defendant counters that the amendments to the definition of "called party" nullify the ruling in *Osorio*, and it is clear that those amendments did follow the *Osorio* ruling, as they were made in 2015.

---

[1] The viability of Plaintiff's cause of action appears to turn on whether Aisha Hamza is considered a "customary user" under the definition of a "called party." If the parties have not taken Aisha Hamza's deposition, the Court directs that the parties schedule the deposition of Aisha Hamza as soon as possible.

Plaintiff also argues that Defendant's argument does not go to standing but instead necessitates a determination of fact not appropriate for consideration at this stage of the proceedings. Defendant asserts that it is simply a factual challenge to standing and requests that:

> If the Court believes a factual dispute over a jurisdictional issue exists, limited jurisdiction discovery (subpoena to cell phone provider and deposition of Aisha Hamza) or an evidentiary hearing would be appropriate to address that issue. See *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996) ("[T]he district court is empowered to resolve factual disputes when necessary to resolve challenges to subject matter jurisdiction."); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) ("Such a factual attack on subject matter jurisdiction commonly has been referred to as a 'speaking motion.' . . . In reviewing these speaking motions, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts.").

Dkt. No. 15, PgID 208.

Defendant's argument is at odds with the vast majority of decisions rendered by courts considering whether a concrete injury-in-fact has occurred when a plaintiff makes invasion of privacy allegations based on calls or texts received that the plaintiff has pled violated the TCPA. *See, e.g.*, *LaVigne v. First Comm. Bancshares, Inc.*, No. 1:15-cv-00934, 2016 WL 6305992, at \*7 (D.N.M. Oct. 19, 2016) ("The TCPA codifies the long-recognized common law tort of invasion of privacy . . . for a particularly intrusive type of unwanted conduct: unauthorized 'robocalls.'"). As one of the cases cited by the *LaVigne* court recognized in the context of invasion of

8

privacy allegations, "it is the fact of the call (or calls) that creates the injury sufficient to confer standing." *Ung v. Universal Acceptance Corp.*, 2016 WL 4132244, at *2 (D.Minn. 2016).

Defendant's reliance on *Kostmayer Constr., LLC v. Port Pipe & Tube, Inc.*, No. 2:16-cv-01012, Slip Opinion (W.D. La. Oct. 19, 2016), is not persuasive. In *Kostmayer*, unlike this case, the plaintiff did not specify what his injuries were. That plaintiff literally alleged that the defendant's unsolicited faxes "caus[ed] Plaintiff and Plaintiff Class to sustain statutory damages, in addition to actual damages, including but not limited to those contemplated by Congress and the FCC." *Id*. at 1. The absence of specified harm was fatal to a finding of concrete injury, something that is not present in this case where Plaintiff alleged how his privacy was invaded and costs (albeit minimal) he incurred.

Defendant asserts that the other injuries Plaintiff alleges (loss of battery power, incurring charges for his phone) are injuries Plaintiff would have incurred whether the texts were sent from an ATDS or resulted from manual texting. Relying on *Romero v. Dep't Stores Nat'l Bank*, No. 15-CV-193, 2016 WL 4184099, at *5 (S.D. Cal. Aug. 5, 2016) (a plaintiff who would have been no better off if the defendant made a call

9

without an ATDS has no standing under Article III to claim a violation of the TCPA).[2] Many courts deciding motions to dismiss for lack of Article III standing in TCPA cases have reached the opposite conclusion. *See, e.g., Mey v. Got Warranty, Inc.*, 2016 WL 3645195, at *3 (N.D. W.Va. 2016) ("all ATDS calls deplete a cell phone's battery, and the cost of electricity to recharge the phone is also a tangible harm. While certainly small, the cost is real, and cumulative effect could be consequential."); *LaVigne*, No. 1:15-cv-00934, Slip Op. at 13 (emphasis in original) (first, rejecting *"Romero* [a]s an outlier in holding that a violation of the TCPA is a bare *procedural* violation and that some additional harm must be shown to establish standing," and, second, finding that an argument such as that made by Defendant – that additional harm is necessary – "conflates the *means* through which it (allegedly) violated the TCPA with the *harm* resulting from that alleged violation.").

The majority of cases have recognized a concrete injury-in-fact when a plaintiff alleges an invasion of privacy (and/or minimal costs), such that Article III standing

---

[2]Plaintiff relies on *McNamara v. City of Chicago*, 138 F.3d 1219, 1222 (7th Cir. 1998). In *McNamara*, nine white plaintiffs who sued the City of Chicago for promoting African-Americans instead of them, allegedly under an affirmative action program. The court applied the standing test above (that plaintiff has no Article III standing if he "would have been no better had the defendant refrained from the unlawful acts of which the plaintiff is complaining") only to the six plaintiffs who would not have been promoted even without the affirmative action program, not to those who might have been promoted but for the affirmative action program. *Id.* Defendant argues that *Romero* and *McNamara* apply in this case and dictate a finding that Plaintiff has not proven a concrete injury-in-fact.

exists. The reasoning of these courts is reasonable and persuasive in light of the purposes of the TCPA. As stated recently by a district court in the Eastern District of Texas:

> The Court finds a TCPA violation can cause intangible concrete harm. As directed by *Spokeo* [*Inc. v. Robins*, 136 S.Ct. 1540], the Court should first consider the history of the intangible harm and Congress's judgment. The harm caused by unwanted phone calls is closely related to an invasion of privacy, which is a widely recognized common law tort. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 486 U.S. 749, 763 (1989). "Even if invasion of privacy were not a harm recognized as redressable through a common law tort claim, it would meet the requirement of concreteness as interpreted by *Spokeo* because Congress so clearly identified it as a legally cognizable harm." *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 WL 3645195, at *4 (N.D. W.Va. June 30, 2016). Congress's judgment in enacting the TCPA was to protect consumers' privacy rights. Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394–95 (codified as a note to 47 U.S.C. § 227). Congressional findings that accompany the TCPA illustrate this intent. *See id*. ("[T]he evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy . . . ."). Thus, Congress identified the intangible harm of invasion of privacy as legally cognizable. Considering this history and Congress's judgment, the Court finds an invasion of privacy within the context of the TCPA constitutes a concrete harm that meets the injury-in-fact requirements.

*Holderread v. Ford Motor Credit Co., LLC*, No. 4:16-cv-00222, Slip Op. at 6 (E.D. Tex. Oct. 26, 2106).

The standard proposed by Defendant, as set forth in *Romero*, is not reasonable and should not be adopted. As the *LaVigne* court stated:

> Defendants have also offered *Romero*, which is hardly convincing. Under its rather draconian analysis, a plaintiff would find it almost impossible to allege a harm as a result of these robocalls. Worse, the case ignores the existence of intangible harms that have been recognized in the legislative history and in the case law. The Court agrees with Plaintiff that *Romero* is an outlier in holding that a violation of the TCPA is a bare procedural violation and that some additional harm must be shown to establish standing.

*LaVigne*, No. 1:15-cv-00934, Slip Op. at 12-13.

The Court denies Defendant's Motion to Dismiss as to Count I.

    2.    *Count II*

Count II of Plaintiff's First Amended Class Action Complaint alleges a claim for willfulness under the TCPA. Section 227(b)(3) of the TCPA provides:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

Recently, the Court addressed this issue in *Duchene v. OnStar, LLC*, No. 15-13337, 2016 U.S. Dist. LEXIS 97129 (E.D. Mich. July 26, 2016). The Court held that "a willful or knowing violation of [the] TCPA requires that Plaintiff has to plead that Defendant was made aware of/notified that Plaintiff did not consent to calls from Defendant." *Duchene*, 2016 U.S. Dist. LEXIS 97129, at *19. *See also Harris v. World Fin. Network Nat'l Bank*, 867 F.Supp.2d 888, 895 (E.D. Mich.

2012) ("Plaintiff must also show that Defendant knew that Plaintiff did not consent to the phone calls"). In *Duchene* (who was represented by the same legal counsel as Plaintiff), the plaintiff "did not plead that he notified [d]efendant that he did not consent to the calls (or that [d]efendant was otherwise aware that Plaintiff did not consent to the calls)," and the Court granted the defendant's motion to dismiss.

As Plaintiff, like the plaintiff in *Duchene,* has not alleged that he notified Defendant that he did not consent to the text messages sent by Defendant, the Court grants Defendant's Motion to Dismiss Count II of Plaintiff's First Amended Class Action Complaint.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Dismiss with respect to Count I and **GRANTS** Defendant's Motion to Dismiss with respect to Count II.

IT IS ORDERED.

S/Denise Page Hood
Denise Page Hood

                        Chief Judge, United States District Court

Dated: March 22, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 22, 2017, by electronic and/or ordinary mail.

                        S/LaShawn R. Saulsberry
                        Case Manager